[Civ. No. 3803. Second Appellate District, Division Two.—March 9, 1923]

## G. E. MORRIS, Respondent, v. ELMER C. MOORE, Appellant.

[1] MALICIOUS PROSECUTION — PROBABLE CAUSE—BURDEN OF PROOF.— In an action for damages for alleged malicious prosecution, the burden rests upon the plaintiff to prove want of probable cause, which has been defined to be "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true"; and, what facts, or whether particular facts, constitute probable cause is a question of law for the court.

[2] ID.—VIOLATION OF SECTION 476A, PENAL CODE—PROBABLE CAUSE FOR BELIEF—EVIDENCE.—The facts that plaintiff gave defendant a check on a bank where he did not have sufficient funds in, or credit with, that bank to meet the check, that after being informed that the bank had refused payment of the check he made no explanation of the reason therefor to defendant, although he had ample opportunity to do so, and that after making an arrangement with defendant whereby he would be permitted to "work out" his indebtedness to the latter, he, without having done so, surreptitiously left the city taking with him an automobile which he had turned over to defendant, but which it was agreed he would continue to use while he was working out the indebtedness to defendant, gave defendant probable cause to believe that

---

1. Probable cause in action for malicious prosecution as question for court or jury, note, L. R. A. 1915D, 1.

plaintiff had committed the crime denounced by section 476a of the Penal Code.

[3] ID.—AGREEMENT NOT TO PROSECUTE—EVIDENCE—PRESUMPTION.— There having been no evidence that defendant agreed not to prosecute plaintiff, there was no valid basis for the theory of the trial court that the act of defendant, in entering into the agreement with plaintiff whereby the latter would be permitted to "work out" his indebtedness to defendant, extinguished any public offense of which plaintiff might have been guilty, and that he was no longer subject to prosecution; and as the making of such an agreement would have constituted a felony, the presumption of innocence compelled the rejection of any ill-founded inference that there was an agreement not to prosecute.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

A. L. Wissburg, James E. O'Keefe and C. H. Van Winkle for Appellant.

Shreve, Dorn & Shreve and E. L. Johnson for Respondent.

FINLAYSON, P. J.—This is an action to recover damages for an alleged malicious prosecution of plaintiff by defendant, who, in an affidavit sworn to by him and filed in the justice's court of San Diego township, charged that plaintiff, in violation of section 476a of the Penal Code, willfully and with the intent to defraud defendant, drew and delivered to the latter his check on a San Diego bank knowing that he had not sufficient funds in or credit with the bank to meet the check upon its presentation. After his preliminary examination before the justice plaintiff was discharged and the criminal proceeding against him was dismissed upon the ground that there was no sufficient cause to believe him guilty. Thereafter plaintiff brought this action for alleged malicious prosecution. The case was tried by the court without a jury. The trial court found that defendant instituted the criminal proceeding against plaintiff without probable cause and with malice, and gave judgment for plaintiff accordingly. Defendant appeals from the judgment and likewise from an order denying him a new trial. The order denying a new trial is not appealable and

for that reason the attempted appeal therefrom must be dismissed.

[1] In an action of this character the burden rests upon the plaintiff to prove want of probable cause, which has been defined to be "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*Lee* v. *Levison*, 173 Cal. 169 [159 Pac. 440].) What facts, or whether particular facts, constitute probable cause is a question of law for the court. (*Davis* v. *Pacific Telephone etc. Co.*, 127 Cal. 319 [57 Pac. 764, 59 Pac. 698].)

[2] With these elementary principles in view we deem it unnecessary to go beyond an examination of the question of probable cause for the prosecution.

The evidence introduced by plaintiff discloses the following: Plaintiff, who had been employed as a chauffeur in the operation of automobiles on a stage route running out of San Diego, on May 29, 1921, at the city of San Diego, drew his check on a bank of that city for $109.70 and delivered it to defendant. The sum for which it was drawn was the amount due by plaintiff to defendant as the latter's share of the proceeds of the sale of certain tires which plaintiff had sold for defendant. At the time when the check was drawn plaintiff was likewise indebted to defendant in about $400 for automobile accessories theretofore sold to him by defendant.

Defendant deposited the check in a bank at San Diego in which he kept his account. In due time that bank presented it to the drawee bank. Payment was refused by the latter institution upon the ground that plaintiff did not have sufficient funds. On June 4, 1921, defendant's bank mailed him a written notice that plaintiff's check had been returned unpaid for lack of funds. A few days later defendant met plaintiff on the street in San Diego and informed the latter that his check had been returned for want of sufficient funds to pay it.

Plaintiff, testifying as a witness in his own behalf, upon being asked by his counsel what he did when defendant informed him that the bank had refused payment on the check, testified as follows: "When he [defendant] told me there was not enough money for the check I couldn't understand it. I thought there was something wrong, so I went

up and checked over my account, and I saw I had made
a fifty dollar mistake in my check stubs, and he didn't put
the check in, it was several days after I gave it to him, and
there was only sixty dollars, or something like that, in the
bank." It will be noted that while plaintiff said that he
"could not understand it" and that he "thought" there
was something wrong, he did not testify that he told de-
fendant that he could not understand why the check was
returned or that he told defendant that he thought some-
thing was wrong. Nowhere in his testimony does he say
that he ever informed defendant of the mistake which he
claimed to have made in his figures on the check stubs.
When he was met on the street by defendant and told that
the check had been returned for lack of sufficient funds to
meet it, a situation presented itself which called for candor
and frankness on plaintiff's part. If he did indeed make
an error in his calculations, as he claimed that he had, it
would be but natural for him to explain the matter fully to
defendant at the first opportunity after his examination of
his check stubs. If a mistake had been made, and if plain-
tiff did in fact draw the check in ignorance of the exact
state of his checking account, defendant, who met plaintiff
often during the ensuing six weeks, might well have ex-
pected that he would be given some sort of a satisfactory
explanation by plaintiff. But no explanation was offered.
At any rate there is no evidence that any ever was given.
Plaintiff simply testified that when informed by defendant
that the bank had refused to pay the check he "thought"
there was something wrong, and that he later discovered
how he had made the mistake. The record is barren of any
fact from which it might be inferred that he ever explained
the matter to defendant before the latter instituted the
criminal prosecution.

A week or so after the return of the check unpaid, the
debt evidenced by that instrument still remaining unsatis-
fied and plaintiff still being indebted for the other sums
which were due to defendant for automobile accessories
previously sold by the latter to plaintiff, the two entered
into an agreement whereby two automobiles which had been
operated by plaintiff on a stage line running out of San
Diego were turned over to defendant with the understand-
ing that the former would continue to drive one of his

automobiles and that all of the net profits arising out of the operation of the two cars should be applied on plaintiff's total indebtedness to defendant—including the $109.70 for which the check had been drawn. The automobiles were encumbered with liens to secure debts due third parties.

The arrangement whereby plaintiff thus undertook to "work out" his indebtedness to defendant continued for about a month, when, without previous notice to defendant, plaintiff left San Diego and went to Taft, in Kern County, to seek employment there. According to plaintiff's testimony, which on this appeal must be accepted as true, he mailed a letter to defendant about three days after leaving San Diego. He testified that he mailed it at San Bernardino while on his way to Taft, and that in it he notified defendant of his departure. Defendant testified that he never received the letter.

When plaintiff left for Taft the amount of the check and a considerable part, if not all, of his original indebtedness to defendant remained unpaid. Plaintiff took with him one of the two automobiles which he previously had delivered to defendant under the arrangement whereby he had agreed to "work out" his indebtedness.

On July 19, 1921, which was shortly after learning that plaintiff had left San Diego and gone to Taft, defendant called upon the district attorney of San Diego County and narrated all of the facts connected with the giving of the check, but he failed to tell about the subsequent arrangement which he had entered into with plaintiff to enable the latter to "work out" his indebtedness. Upon the strength of the facts thus related to him, the district attorney advised defendant that there was probable cause for plaintiff's prosecution, and thereupon the criminal proceeding was inaugurated, resulting finally in plaintiff's discharge, as already mentioned.

Upon these facts, unexplained, it is manifest that appellant did have probable cause for the prosecution. The facts and circumstances of which he had knowledge were such as would naturally excite the belief in a reasonable mind that respondent had committed the crime denounced by section 476a of the Penal Code—that is, that respondent gave the check knowing that he had not sufficient funds in or credit

with the bank to meet it in full upon its presentation, and that he gave it with the intent to defraud appellant.

Not only was the check returned unpaid for want of funds, but it never was paid, although some days elapsed between the time when appellant notified respondent of the return of the check unpaid and the time when the parties entered into the arrangement whereby respondent was to "work out" his obligation. This fact, unexplained, was sufficient to arouse in the mind of a reasonable man the belief that there were not sufficient funds in or credit with the bank to meet the check upon its presentation. And the fact that respondent never vouchsafed any explanation for the lack of sufficient funds in the bank—the fact that he never told appellant how it was that he made a miscalculation in his check stubs—although the situation was one which would naturally call for an explanation, if any there were, warranted a reasonable man in believing that when respondent gave the check he knew that he had not sufficient funds in the bank to meet it. And if respondent gave the check knowing that he had not sufficient funds in or credit with the bank, the inference was but natural that he drew it and gave it to appellant with the intent to defraud the latter. (*People* v. *Kawano*, 38 Cal. App. 612 [177 Pac. 174].) Moreover, respondent's subsequent behavior, his surreptitious departure from San Diego, for example, was such as naturally would tend to strengthen the belief that he was a man who could not be trusted—a man who might give a check fraudulently, knowing that there were not sufficient funds in or credit with the bank to meet it when presented.

[3] From certain remarks made by the learned judge of the court below during the course of the trial we opine that the case was decided in that court upon the theory that the subsequent arrangement, whereby respondent undertook to "work out" all of his indebtedness to appellant, amounted to a settlement and satisfaction of the debt for which the check had been drawn, and that for that reason respondent's crime, if he was guilty of any public offense, had been extinguished and he no longer was subject to prosecution. There is no valid basis for any such theory.

The record is barren of any fact tending to show that appellant ever agreed not to prosecute respondent. Had

such an agreement been made it would have constituted the compounding of a felony—a crime denounced by the Penal Code. The crime defined by section 476a is punishable by imprisonment in the state prison. It is true that it also is punishable by imprisonment in the county jail. But when a crime is punishable by imprisonment in the state prison or by imprisonment in the county jail, in the discretion of the court, it must be deemed to be a felony for all purposes until after a judgment imposing a punishment by imprisonment in the county jail. (Pen. Code, sec. 17; *People* v. *War,* 20 Cal. 117.) A felony may not be compromised by leave of court. (Pen. Code, secs. 1377–1379.) Every person who, for a consideration, agrees to abstain from the prosecution of a crime which may not be compromised by leave of court is guilty of compounding a crime. (Pen. Code, sec. 153.) There is no direct evidence that appellant ever agreed not to prosecute respondent; and since appellant would have been guilty of compounding a crime had he made any such agreement for a consideration, the presumption of innocence compels the rejection of any ill-founded inference that there ever was an agreement not to prosecute.

A compromise arrangement entered into solely for the purpose of enabling a creditor ultimately to recover the money due to him from his criminal debtor will not suffice, of itself, to bar a criminal prosecution or furnish evidence of a want of probable cause. Appellant had the legal right to the money evidenced by the check. Having such right, he had the legal right to make such arrangement for the payment of the debt as the parties might voluntarily agree to, provided, of course, there was no attempt at the compounding of a felony. "The defendant," said the New York court of appeals in *Fagnan* v. *Knox,* 66 N. Y. 532, "had a legal right to settle with the plaintiff, and receive payment for the amount abstracted as and for a debt upon an implied contract, and such settlement was no bar to a criminal prosecution, nor did it furnish evidence that the defendant did not believe that the money had been embezzled. The mere fact of settlement had no legitimate bearing on that question, certainly not against the defendant, and was equally consistent with a belief of guilt or innocence." The Michigan supreme court states the rule thus: "When a plaintiff is shown to have taken and appropriated

to his own use property belonging to his employer, proof of an attempt by the defendant to settle the matter and obtain his own does not of itself tend to show a want of criminal intent upon the part of such plaintiff, or belief in his innocence upon the part of the defendant.'' (*Harris* v. *Woodford,* 98 Mich. 147 [57 N. W. 96]. See, also, *Rankin* v. *Crane,* 104 Mich. 6 [61 N. W. 1007].)

The showing made by respondent at the trial in the court below failed to disclose a want of probable cause for his prosecution.

The appeal from the order denying a new trial is dismissed. The judgment is reversed.

Works, J., and Craig, J., concurred.