[Civ. No. 3377. Third Appellate District.—December 9, 1927.]

C. E. FACKRELL, Respondent, v. HUGH McDONALD, Appellant.

Fred W. Heath for Appellant.

Warren L. Williams and Seymour S. Silverton for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by defendant Hugh McDonald from a judgment entered against him upon a verdict of a jury in the sum of $5,000 in an action for malicious prosecution. Appellant also appeals from the order denying him a new trial. The order denying a new trial is not appealable and for that reason the attempted appeal therefrom must be dismissed.

The plaintiff C. E. Fackrell brought this action in the superior court of Los Angeles County, alleging that the defendant Hugh McDonald did, maliciously and without probable cause, swear to a complaint charging him with the crime of grand larceny, and procured a warrant for his arrest upon that charge.

At the conclusion of plaintiff's evidence defendant made a motion for a nonsuit upon the ground that plaintiff had failed to establish want of probable cause and the existence of malice in the criminal prosecution. This motion was denied. A motion for a new trial was made upon various grounds, which motion was also denied.

The facts necessary for a correct understanding of the questions involved in this appeal may be thus briefly stated: The plaintiff and respondent was, at the time of the transaction involved herein, a stock salesman, thirty-three years of age, residing at Glendale, California. During the latter part of December, 1922, respondent called upon the appellant Hugh McDonald at his home near Glendale, California, and sought to sell him stock in a corporation known as the "Blue Tank Company." On his first visit respondent was unable to interest Mr. McDonald in the stock, and

thereafter made a number of other calls upon appellant from time to time for the same purpose. During one of these visits respondent learned that appellant had no ready money, but owned a note for $8,000, secured by a first mortgage on certain real estate situate in or near Glendale, California. Finally, on June 18, 1923, it was agreed between respondent and appellant that respondent would take said note and mortgage and dispose of them at a discount of not more than ten per cent, and from the proceeds buy $5,000 worth of "Blue Tank Company" stock in the name of appellant, and return the balance of the money, amounting to some $2,200 in cash to appellant. Thereupon appellant signed what is called a "purchasing order" for the stock, and at the same time gave plaintiff an order on a bank in Glendale for the note and mortgage, where it had been left for safekeeping by appellant. No time limit was specified in said "purchasing order" as to when the stock should be purchased or the note and mortgage sold. The note was not indorsed by appellant and the mortgage was not assigned to respondent. Neither did respondent have any power of attorney from appellant under which he could assign the note and mortgage. Respondent received the note and mortgage from the bank on the first day of August, 1923. Shortly thereafter, and on the 23d of August, 1923, appellant left California on a visit in the east, having placed all his business in the hands of his attorney, Mr. Fred W. Heath, and requested respondent to deliver the stock and money, etc., to Mr. Heath, his attorney. During his absence, and on October 4, 1923, while in Boston, appellant received a telegram from his attorney stating that respondent was trying to dispose of the note and mortgage to the Nugent Oil Company for stock, and that the situation was not favorable, and for him, appellant, to wire respondent to deliver the note and mortgage to Mr. Heath. Upon receipt of this telegram appellant sent a telegram to respondent requesting him to deliver the note and mortgage to his attorney, Mr. Heath. This request was not complied with by respondent. Appellant returned to Glendale on October 22, 1923, and on the next morning had a conversation with respondent, in which respondent stated that the note and mortgage could not be sold at a discount of ten per cent and wanted appellant to agree to a discount

of twenty per cent, which appellant refused to do. Respondent did not return the note and mortgage and did not purchase the stock. Soon after this conversation on October 23, 1923, Mary C. Ward, the maker of the note and mortgage, called upon appellant and told him that a lady by the name of Mrs. George had informed her that she, Mrs. George, owned the McDonald note and mortgage of $8,000, and insisted that Miss Ward pay the interest to her. The agent of Miss Ward also called upon Mrs. George and she also informed him that she was the owner of the McDonald note and mortgage and had purchased it in August, 1923, and stated to this agent that she desired respondent to be present before she would allow the agent of Miss Ward to inspect the note and mortgage. A few days later this agent of Miss Ward, a Mr. Heald, interviewed respondent and told him that it was immaterial to Miss Ward who received the interest, but that Miss Ward must know that she was paying the interest to the right party. Thereupon respondent replied, "I think Mrs. George has advanced money for the transaction." Neither the note nor mortgage, or any assignment thereof, was exhibited to Mr. Heald. Mr. Heald then called upon appellant and informed him of what respondent had said, and also told him that Mrs. George claimed to own the note and mortgage. Shortly before or after this conversation Mr. Nugent of the Nugent Oil Company informed appellant that respondent had offered to sell the Nugent Oil Company the $8,000 note and mortgage and had stated to him that he, respondent, "had a power of attorney in the matter of the mortgage and could dispose of it to anybody he wanted to." Both before and after this conversation with Mr. Nugent appellant had consulted Mr. Heath, his attorney, regarding this matter and Mr. Heath directed appellant to again call upon respondent and demand the return of the note and mortgage, or the delivery of the money and stock. In pursuance to this request, appellant set about looking for respondent and after two or three days finally located him and again demanded the return of his papers, which demand was again ignored by respondent. Appellant testified that on this occasion, after he had demanded the return of his papers, respondent replied: "I have gotten in a hard row of stumps and had to use your mortgage and put it

up for collateral," whereupon appellant replied, "If you did, you will get into trouble." Respondent denies having made any such statement, but does not deny that appellant demanded a return of the note and mortgage, and that such demand was not complied with. Appellant again reported to his attorney that his efforts to obtain the note and mortgage from respondent were unavailing, whereupon his attorney again requested appellant to take a witness and go and again demand a return of his papers from respondent. Appellant again called upon respondent, this time in company with his brother, and demanded the return of his note and mortgage and, according to both appellant and his brother, respondent admitted that he had pledged appellant's note and mortgage, and that appellant would have to pay $7,200 to get his note and mortgage back, and that appellant said, "See here, Fackrell, you put the Blue Tank stock in escrow by Saturday or there will be trouble," and respondent said, "I won't do it." The respondent Fackrell testified that this conversation occurred on November 19th, and that appellant told him that he, McDonald, had decided to go through with the deal as he had agreed in the first place and let Fackrell sell the papers subject to ten per cent discount, but that he said, "I will give you five days to sell them in and if you haven't sold them in five days I will have you arrested. . . . He told me he would be back in five days after the papers. The 24th, he said, would be Saturday, and he would be back to my office for the papers." After this conversation, whatever date it took place, no further demands were made upon respondent, and neither the note nor mortgage or stock or money, or any part thereof, was ever delivered either to the attorney, Mr. Heath, or appellant. Another conference was had with the attorney and Mr. Heath advised appellant to go to see the district attorney and gave appellant a letter to the district attorney. Appellant called upon Mr. Orme, a deputy district attorney of the county of Los Angeles, and stated to him all the facts relative to the transaction with respondent. Mr. Orme advised him that he wanted to make some independent investigation before issuing a warrant and asked appellant to secure certain other information relative to the transaction, which appellant furnished and, after Mr. Orme had made an independent investigation and

about one month had elapsed, a complaint charging respondent with grand larceny on the eighteenth day of June, 1923, was prepared by the deputy district attorney and appellant requested to take it to the justice of the peace and sign and swear to it before him, which was done on the 30th of November, 1923. Respondent was arrested upon that date and in default of bail was held in the county jail until December 3, 1923, when he gave bail in the sum of $3,000 and was released. On December 5, 1923, the preliminary examination was commenced and continued to the 13th, at which time it was agreed by the district attorney's office, and the attorney for respondent, that if respondent would deliver to appellant the note and mortgage the criminal action would be dismissed. Thereupon the note and mortgage were produced and given to appellant, and a receipt was prepared by the deputy district attorney and signed by appellant acknowledging the return of his note and mortgage, and the action was dismissed and respondent discharged. Following the dismissal of the action the case at bar was commenced.

There is some conflict between the testimony of appellant and the testimony of respondent as to what was said and done at some of these conversations between them, but all the other facts are substantially uncontradicted.

The appellant first contends that the evidence is wholly insufficient to show that he instituted the criminal proceedings against respondent without probable cause. A careful study of all the evidence in the case convinces us fully that this contention must be sustained.

The law is well settled that in an action of this character the burden is upon the plaintiff to prove both malice and want of probable cause. (*Potter* v. *Seale*, 8 Cal. 217; *Anderson* v. *Coleman*, 53 Cal. 188; *Grant* v. *Moore*, 29 Cal. 644; *Jones* v. *Jones*, 71 Cal. 89 [11 Pac. 817]; *Smith* v. *Liverpool*, 107 Cal. 433 [40 Pac. 540]; *Davis* v. *Pacific Telephone Co.*, 127 Cal. 312 [57 Pac. 746, 59 Pac. 698]; *Lacey* v. *Porter*, 103 Cal. 597 [37 Pac. 635]; *McKenna* v. *Heinlen*, 128 Cal. 97 [60 Pac. 668]; *Lee* v. *Levinson*, 173 Cal. 166 [159 Pac. 438]; *Morris* v. *Moore*, 61 Cal. App. 314 [214 Pac. 995]; *Booraem* v. *Potter Hotel Co.*, 154 Cal. 99 [97 Pac. 65]; *Jirku* v. *Brod*, 42 Cal. App. 796 [184 Pac. 413]; *Squires* v. *Southern Pacific Co.*, 42

Cal. App. 459 [183 Pac. 695]; *Hewelcke* v. *Shipman*, 65 Cal. App. 257 [223 Pac. 1019]; *Franzen* v. *Shenk*, 192 Cal. 572 [221 Pac. 932]; *Pickering* v. *Havens*, 70 Cal. App. 381 [233 Pac. 346]; *Redgate* v. *Southern Pacific Co.*, 24 Cal. App. 573 [141 Pac. 1191].)

Reasonable or probable cause has been defined to be "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*Potter* v. *Seale, supra; Redgate* v. *Southern Pacific Co., supra; Lee* v. *Levison, supra; Morris* v. *Moore, supra;* 2 Greenleaf on Evidence, secs. 453, 457.)

The facts and circumstances of which appellant had knowledge at the time he sought the arrest of respondent were such as would naturally excite the honest belief in any reasonable mind that respondent had committed a crime. Appellant had turned over to respondent a note and mortgage of $8,000 six months before, with the understanding that respondent would sell the same and out of the proceeds purchase for appellant $5,000 worth of "Blue Tank Company" stock, and return the balance in cash to him, less a discount of ten per cent. Respondent did not purchase the stock as agreed; neither did he return the note and mortgage to appellant, or the proceeds thereof. Appellant had many times demanded the return of his papers, both personally and through his attorney. The maker of the mortgage had informed appellant that another party was claiming to own the note and mortgage and demanding that the interest be paid to her. These facts, alone, as we have stated, would be sufficient to create in the mind of any reasonable person the belief that respondent had misappropriated the property of appellant; but appellant, not being satisfied with his own judgment that respondent had misappropriated his property, sought the advice and counsel of his attorney and laid before him fully and fairly all the facts within his knowledge, and after so doing he was advised by his attorney that in the opinion of the attorney a crime had been committed, and directed that he take the matter up with the district attorney. Following the advice of his own counsel, the appellant took the matter up with a deputy district attorney and likewise made to him a full and fair disclosure of all the facts within his

knowledge and, after so doing, the deputy district attorney advised appellant that a crime had been committed.

Respondent lays great stress upon the fact that the note was not indorsed by appellant and, he having no power of attorney from appellant, the note and mortgage were not negotiable and valueless in his hands under such conditions. There is no merit in this contention. The fact that the note and mortgage had been placed in respondent's possession without indorsement and for a specific purpose, coupled with the fact that this specific purpose had not been carried out by respondent, but, on the contrary, information was coming to appellant that respondent had represented to others that he had a power of attorney to dispose of the mortgage in any way he saw fit, and the further information coming to appellant that another person was actually claiming to own the note and mortgage, and such alleged owner was demanding the interest from the mortgagor, would certainly be sufficient suspicious circumstances to warrant appellant, or any reasonable man, in believing that respondent had misappropriated his property and was guilty of a crime. It is not what respondent could have *lawfully done with the note and mortgage,* but the test of probable cause is: Were the facts and circumstances that were known to appellant sufficient to warrant him, as a reasonable man, in honestly believing that respondent had disposed, or was attempting to dispose, of his property unlawfully? A careful review of all the evidence convinces us that appellant had abundant evidence upon which to base such a belief.

Respondent also lays particular stress upon the fact that the complaint states that the note and mortgage were stolen on the eighteenth day of June, 1923, when they were not delivered into the possession of respondent until August 1st, and that appellant testified that he did not read the criminal complaint after the same had been prepared by the deputy district attorney. There is no merit in either of these contentions. The matter of preparing the legal papers and placing the proper charge against respondent was left entirely to the deputy district attorney. Appellant was not an attorney and could not have known the exact name of the crime that the facts indicated respondent had committed.

Appellant also contends that there is no evidence that he acted maliciously in causing the arrest and prosecution of respondent. We need not, however, dwell at length upon the question of malice, for, as we have seen, the evidence is wholly insufficient to show want of probable cause. The law is well settled that, in order to support an action for malicious prosecution, two essential facts must concur, namely: want of probable cause and malice. (*Runo* v. *Williams*, 162 Cal. 444 [122 Pac. 1082]; *Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578]; *Redgate* v. *Southern Pacific Co., supra; Potter* v. *Seale, supra; Anderson* v. *Coleman, supra.*)

To constitute malice *there must be "malus animus," denoting that the party who instituted the proceeding was actuated by a wrong motive; that is, he must have had in his mind some evil or sinister purpose.* (*Pickering* v. *Havens, supra; Redgate* v. *Southern Pacific Co., supra.*)

We find no direct evidence of malice and no facts or circumstances from which malice or bad faith on the part of appellant could be lawfully inferred. The evidence of respondent, which is relied upon to show malice, is the following: "Q. When was the next conversation you had with Mr. McDonald before he had you arrested? A. On November 19th . . . Q. State what Mr. McDonald said to you there? A. He told me he had decided to go through with the deal, as he agreed to in the first place, and let me sell the papers subject to ten per cent discount; but he says, 'I will give you five days to sell them in, and if you haven't sold them in five days I will have you arrested . . .' Q. What is the next you heard about Mr. McDonald or the case? A. He told me he would come back in five days after the papers. The ·24th, he said, would be Saturday, and he would come back to my office for the papers. Q. What is the next thing that happened in connection with it? A. The officers came for me and arrested me on November 30th."

This evidence, as above stated, was contradicted by appellant and his brother, who was present. Assuming that respondent's statement is correct, nevertheless, this would not constitute malice, especially in view of the circumstances under which it was made. Appellant had been trying for five or six months to get his property back, and another

party was claiming to own the mortgage. To tell a man, under such circumstances, that he would have him arrested, would certainly not import malice. To tell a man he will be arrested, if you find that he has stolen your automobile, is no basis for the inference of malice. If respondent was acting in the best of faith, as he contends, *why did he not return to appellant, or to his attorney, the note and mortgage?* At the preliminary examination in the justice court, he delivered up the note and mortgage to appellant. He was certainly obligated to either carry out the contract that he had made with appellant or return to the appellant his property. Respondent did neither until he was arrested and then he was more than willing to surrender up appellant's property.

We conclude, therefore, that there is no evidence upon which the jury could infer a want of probable cause, or the existence of malice, and that the motion for a nonsuit made by appellant should have been granted; or, if not granted, a directed verdict should have been ordered in favor of the defendant and appellant.

From the conclusions that we have reached it is unnecessary for us to discuss the other points relative to the instructions and the admission of testimony, urged by appellant. We find no basis whatever upon which the judgment can be sustained.

The appeal from the order denying a new trial is dismissed. The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 6, 1928.

Preston, J., being disqualified, did not participate.