## POTTER v. SEALE.

Public policy and security require that prosecutors should be protected by the law for the civil liabilities, except in those cases where the two elements of malice in the prosecutor, and want of probable cause for the prosecution, both occur.

Though malice be proved, yet if there was probable cause, the action must fail.

The question of malice is one for the jury to decide. Probable cause is a mixed question of law and fact. The latter may be defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.

Where the defendant has fully and fairly laid his case before counsel, and acts by advice thereof, it is a good defence to the action, though, the question whether the defendant acted *bona fide* under such advice, is a question of intention to be determined by the jury.

APPEAL from the District Court of the Fourth Judicial District.

The facts of this case are fully stated in the opinion of the Court.

*McDougall & Sharpe* for Appellant.

This action was instituted in the Fourth Judicial District Court by Potter against Seale, for malicious prosecution.

The complaint charges a malicious arrest, in the absence of probable cause, before the recorder of San Francisco. The affidavit, upon which warrant issued, is set out in complaint, and sets up certain facts in detail and specifically. The complaint further shows the discharge of plaintiff, and avers malice, but does not deny the truth of the charge made.

The answer denies the allegations generally; sets up that the matters complained of were true; denies all malice, etc.

Under the instructions and ruling of the Court, verdict was rendered, and judgment entered for plaintiff for three thousand three hundred and ninety-four dollars.

The defendant moved for a new trial, which was refused.

The facts are preserved by the case on new trial, and clearly show that the facts in defendant's complaint before the recorder were true, and that the defendant acted under advice of counsel.

The defendant below, and appellant here, insists that there was a total want of cause of action, and if there was any pretext of cause, the verdict was outrageous.

The cause was before this Court at a previous term, and the errors then assigned were the refusal of the Court below to grant a new trial.

The Court was then of the opinion that there was no foundation for the verdict, and reversed the judgment.

On the former trial, there was no proof of the fact that Seale acted under the advice of counsel. This was clearly proved on the last trial.

If there had been a *prima facie* case made out, the advice of counsel, upon a full understanding of the case, would have been a sufficient defence—a complete defence—but there was no *prima facie* case. The charge made by Seale was true—indisputably true; so the record shows; there is no pretence that he made a false charge; there is nothing which raises the presumption of malice.

The lawyer advising, and the magistrate issuing, the writ, may have erred; the fault was certainly not with Seale; and to permit judgments to be entered upon verdicts like this, is to make Courts engines of oppression, instead of guardians of the right.

We insist there is no foundation or cause whatever for the recovery, and ask the protection of this Court in the premises.

The charge here made was substantially true; to sustain this action, it must appear that the charge was maliciously false.   2 Greenleaf Ev., § 453, 2; Cohen v. Morgan, 6 Dow. & Ry., 8; Johnson v. Sutton, 1 Term R., 540; Austin v. Debman, 3 B. & C., 139; Bailey v. Bethum, 5 Taunton, 580; Grant v. Duel, 3 Rob. Louis., 17.

It is for the Court to determine on the facts whether there was probable cause.   2 Greenleaf, 453.

The advice of counsel, upon a full statement, was probable cause.   2 Greenleaf Ev., § 459; Stone v. Swift, 4 Pick., 393.

The facts not justifying the advice, or the arrest, are chargeable upon the attorney and magistrate, and not upon the appellant.

Potter v. Seale.

There being probable cause for the charge made, malice is not material.    1 Term R., 545.

*Cook & Fenner* for Respondents.

In actions of this nature the jury are the judges of the facts and the measure of damages, and unless the damages are outrageously excessive, a Court never interferes.

Upon this question we submit, that the damages are moderate, and the Court below has twice so decided, on motion for a new trial.

The plaintiff and defendant were both men of good standing in the community, and the defendant procured his arrest on a warrant, upon the single ground that he refused to deliver up two notes, which had been paid and canceled, and the defendant at the time holding a receipt of their payment; charging the plaintiff with having fraudulently converted said notes, and disposed of the same with the intention of defrauding him, the defendant.

The facts themselves show that the prosecution was instituted for the only purpose of harassing the plaintiff, and injuring his character.

They were both contractors, and this means was resorted to for the purpose of poisoning the minds of the community against Potter. And Seale even threatened if he did not deliver up the notes, he would give him trouble and annoy him.

This Court separately decided that the granting or refusing a new trial, is a matter resting in the Court below. Drake *v.* Palmer, 2 Cal., 117; Cook *v.* Stewart, 2 Cal., 348; Baldwin *v.* Pollard, 2 Cal., 582; Bartlett *v.* Hoyden, 3 Cal., 55; Speck *v.* Hoyt, 3 Cal., 413; Taylor *v.* McKinly, 4 Cal., 104; Watson *v.* McClay, 4 Cal., 288; Taylor *v.* Cal. Stage Co., 9 Cal. Rep.; Deer Creek & H. C. T. Co. *v.* Wayne, Oct. T., 1856; Weaver *v.* Page, Oct. T., 1856; Farrs *v.* Graves, January T., 1856.

It is not insisted that defendant acted under the advice of counsel.

There is nothing in the record showing how the Court charged upon that point, and in the absence of any instructions or exception, the presumption is, that he put the case fairly to the jury.

The farthest any Court has ever gone, is, that if a party lay the facts of his case fairly before counsel, and acts in good faith upon the opinion given upon such counsel, it is sufficient evidence of probable cause. Hall *v.* Suydam, 6 Barb., 83.

In this case, the party did not lay the facts fairly and fully before his counsel, and the counsel advised him that he had a perfect remedy in a civil action, to recover the possession of the notes, and he persisted in proceeding criminally. See 10 Modern, 214; Modern, 306, and notes; 1 Strong, 691. But has been held in England, that it is not a defence to prove advice of coun-

sel, if the facts are incorrectly stated, or the opinion ill-founded. Howlett *v.* Crutchley, 5 Taunton, 277.

The jury have passed upon the question, and this Court should not disturb it. The Court below, after hearing the case, the evidence, and the counsel, refused to disturb the verdict.

Again : On the former argument of this case, this Court refused to hear discussed the question of damages, and stated that that was a question for the jury, and it did not wish to hear it discussed. And by reference to the record and the opinion delivered by Heydenfeldt, J., it will be seen that he decided it under an error as to the facts stated in the record, and confounded the answer with the statement of facts.

It has also been held that an action for malicious prosecution lies for a bad indictment. Pippet *v.* Hearn, 5 Barr & Ald., 634; reported in 7 Eng. C. L., 217. See to same point, cases above cited.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This was an action for a malicious prosecution. In the Court below the plaintiff had judgment, and the defendant appealed. The case was decided by this Court in October, 1855, and the judgment reversed, and the cause remanded. Upon a second trial in the District Court, the plaintiff again recovered, and the defendant again appealed. The case now comes before us with some *additional* facts, not contained in the previous record.

Public policy and public security alike require that prosecutors should be protected by the law from civil liabilities ; except in those cases where the two elements of malice in the prosecutor, and want of probable cause for the prosecution, *both concur.*

Though malice be proved, yet if there was probable cause, the action must fail. Malice may be inferred from want of probable cause, but want of probable cause cannot be inferred from malice, but must be affirmatively shown by the plaintiff. As to the question of *malice,* it is one solely for the jury, and to sustain this averment the charge must be shown to have been *willfully false.* Probable cause is a mixed question of law and fact. Whether the alleged circumstances existed or not, is simply a question of fact, and conceding their existence, whether or not they constitute probable cause is a question of law. Where the circumstances are admitted, or clearly proved by uncontradicted testimony, it is the province of the Court to determine the question of probable cause, and the Court may order a nonsuit. But if there be a conflict of testimony, or the credibility of witnesses is to be estimated, the cause must go to a jury. As the question of probable cause is a mixed question of both law and fact, it is error to submit to the jury, to say whether there was probable cause. The jury have solely the

right to decide, in cases of reasonable doubt, whether the alleged circumstances really existed. Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. 2 Green. Ev., §§ 453–7; 6 Barbour S. C. R., 86, and the authorities there cited.

These principles seem to be well settled, both by measure and authority; and it only remains to apply them legitimately to the state of case presented by the record.

In this case, the testimony fills but a small space in the record. There were but few witnesses examined; their credibility stands unimpeached, and there is not the slightest perceptible conflict between them. It is, then, one of those cases where the circumstances are clearly established; and the only question to determine is whether these circumstances, in themselves, constitute probable cause.

As two distinct juries, at different terms of the District Court, have found heavy damages for the plaintiff—the first for three thousand three hundred and seventy-five dollars, in August, 1855; and the second for three thousand three hundred and ninety-four and 34-100 dollars, in October 1856—and the learned Judge before whom the cause was tried, refused to grant the defendant a new trial in both instances, we are placed in a position of grave responsibility; and it will, therefore, be proper to state the circumstances under which the prosecution was commenced by the defendant, more in detail than would seem necessary in ordinary cases.

The facts of the case, as stated in the record, were substantially these: In May, 1855, Seale executed to Potter two promissory notes for two thousand dollars each. The notes were afterwards fully paid by Seale, but not delivered up by Potter, Seale taking from Potter a receipt acknowledging full payment of the notes, which receipt was executed long·before the arrest of Potter. A witness for plaintiff stated "that he returned from the Atlantic States in January, 1855, and that afterwards defendant called at his office and had a talk with the plaintiff, his brother, about the two notes above-mentioned; that his brother claimed that Seale owed him some sum of money less than one hundred dollars, and for that reason alone, he refused to deliver to defendant those two notes; that one of said notes was then hypothecated, and the money to redeem the same was paid by witness; that the hypothecation spoken of was before the note was due, and known by defendant; that defendant also told him that unless the plaintiff delivered up said notes he, defendant, should annoy or give plaintiff more trouble than they would be worth to him."

A witness for the defendant testified, that at the time of the arrest, and previous thereto, witness was acting as the

attorney for the defendant, and, at the request of the defendant, called upon the plaintiff, " and I told plaintiff I acted for defendant, and demanded of him to deliver up the two notes here offered by plaintiff—that the defendant, Seale, had been informed that he either had or was about to hypothecate said notes again, and that he was acting wrong if he did not give up said notes.   Plaintiff made no denial of these statements, but replied that he would not be forced to do anything— that he would not be insulted in his own house.   Witness replied, it is not my intention to insult you.   Have you the notes? Plaintiff answered, it is no one's business whether I have or not. Witness replied that defendant would be compelled to institute legal proceedings.   Plaintiff replied he did not care a ——, let the defendant do as he pleased; there were unpleasant feelings existing between them; they were both contractors, and likely one had underbid the other on a contract."   Witness further stated, " that after the interview with the plaintiff, the defendant further consulted witness as to his remedy at law, and what was the most advisable course for him to pursue in order to obtain possession of the notes; that witness advised defendant that he had two remedies, either of which he had the right to pursue, one was by making a complaint before the recorder and obtaining the arrest of the plaintiff, and the other by proceeding in equity to obtain a cancellation; that the latter proceeding was expensive and difficult.   Witness drew up the complaint presented to the recorder, and took charge of the matter for and in behalf of defendant."

The complaint alluded to by the last witness was as follows :

State of California, } ss.
        County of San Francisco.
Henry Seale, being duly sworn, says, that about the fourth day of May, 1854, he gave and executed to one Charles S. Potter two certain notes, of the amount of two thousand dollars each; that afterwards said notes were fully paid and discharged by this affiant; that he has demanded repeatedly of said Charles S. Potter said notes, and that said Potter has given various reasons for not delivering the same; that at one time he has said he had hypothecated the same to raise money—and again, that he had them in his possession, and would not deliver them to this affiant; that this affiant is informed, and verily believes, that said Charles S. Potter has fraudulently used, transferred, and assigned, said notes, with the intent to defraud, deceive, and cheat this affiant, and this affiant verily believes that said Charles S. Potter refuses to deliver said notes, for the reason that he is about to, or has assigned, or transferred, said notes, for the purpose and with the intent to .defraud some person.   Affiant further states that he believes, from what said Potter told him when he paid

the first of said notes, that the same was hypothecated, and that the said Potter afterwards obtained the possession thereof, and refuses, from some causes, to deliver the same to affiant:

Wherefore, affiant prays that said Potter may be arrested for fraudulently assigning, transfering, or using, the personal property of affiant, and that he may be dealt with according to law.

[Signed]                                   HENRY W. SEALE.

Subscribed and sworn to before me, the twenty-second day of March, 1855.

[Signed]            R. H. WALLER, City Recorder.

A warant was issued by the recorder, and the plaintiff arrested. "The defendant went with the constable, who had the warrant, down on Market street, and told him to arrest the plaintiff. After getting down to the plaintiff's place of business, the defendant pointed it out to the officer; the officer went and arrested the plaintiff, and the defendant and another person followed the officer and the plaintiff, so under arrest, through the different streets up to the police-office, where the plaintiff was discharged, on bail, until the next day. On the next day, the plaintiff appeared before the recorder, and produced the two notes mentioned in the affidavit of arrest, and the defendant offered no proof, and the plaintiff was fully discharged and acquitted."

On the trial before the District Court, the plaintiff produced and read in evidence the two notes mentioned.

Was the conduct of the plaintiff such as to afford the defendant reasonable ground for believing that the plaintiff had fraudulently used, transferred, and assigned the notes, or was about to do so, with intent to deceive and cheat the defendant, or some other person?

The fact that defendant had paid the notes without their being delivered, shows clearly the friendly relation existing between the parties, and the willingness of the defendant to oblige the plaintiff.

It is clearly shown that the plaintiff, after receiving the money, did not apply it to redeem the notes, but used it for *other* purposes. At the time defendant called upon the plaintiff, as stated by plaintiff's brother, one of the notes was still pledged, and the witness afterwards advanced the money to redeem it. At that time, plaintiff refused to deliver the notes, upon the sole ground that he claimed the defendant owed him "some sum of money less than one hundred dollars;" while the fact was, that one of the notes was then hypothecated and in the hands of another, and the plaintiff had to borrow the money to redeem it. When afterwards called upon by defendant's attorney, the plaintiff replied that "he would not be forced to do

anything; that he would not be insulted in his own house;" and refused to give any satisfaction as to whether he had the notes or not, alleging it was no one's business. He did not then predicate his refusal to return the paid notes upon the ground that defendant owed him anything, but said there was unpleasant feelings existing between them, and that they were both contractors, and *likely* one had underbid the other on a contract. If there existed any other cause for unfriendly feelings between the parties, except the fact that plaintiff had been paid in full for the notes and refused to return them, it is not shown in the record.

And the conclusion is irresistible, that the alleged claim of less than one hundred dollars, and the reason given by plaintiff for the unpleasant state of feeling existing between them, were mere pretences in excuse for the conduct of plaintiff in refusing to deliver the notes. Having used the money for other purposes, leaving the defendant still liable upon the notes, and without any security that they ever would be redeemed by plaintiff, it was very natural that the plaintiff should seek some plausible justification of such unjustifiable conduct. And, looking to the whole conduct of the plaintiff, we are compelled to reiterate the view formerly expressed by the learned Judge who delivered the opinion of this Court, that "the conduct of the plaintiff in reference to his business transaction with the defendant, was reprehensible in the last degree, and we should be sorry to think that the commercial morality of the age could tolerate it in any other aspect than as dishonorable and unconscientious."

It would seem, from all the circumstances, that the defendant had ample grounds to satisfy a reasonable man that the plaintiff intended to defraud some one, if he had not already done so. He had been fully paid, and the payment must have been made with the understanding that the notes would be redeemed with the money paid by defendant. They were not so redeemed, and this fact alone was good ground for suspicion. But when called upon at different times to return the notes, and still refusing to do so, the plaintiff, by his own conduct, gave the defendant the most just grounds for suspicion. I confess I cannot see what other inference defendant could draw. There was certainly not the slightest honest reason for plaintiff's conduct. Even conceding he had what he considered a good claim against the defendant for a less sum than one hundred dollars, he had no right to retain the two notes for four thousand dollars. He had no lien upon the notes, equitable or legal.

If these views be correct, then the facts, as clearly proved, justified the defendant in the belief stated by him in his affidavit, and he was, therefore, not to blame for stating what he did.

But the facts, as stated in the affidavit, did not authorize the

Potter *v.* Seale.

arrest of the plaintiff, and the question arises whether the defendant should not be held responsible for the error in law.

In the case of Hewlett *v.* Crutchley, 5 Taunt., 277, it was held, that a defendant by obtaining the opinion of counsel, by applying to a weak or an ignorant man, could not shelter his malice in bringing an unfounded prosecution.  But in that case, the defendant was not only an attorney himself, but it was shown that the defendant knew that the alleged facts, upon which the prosecution was founded, were untrue.  It was also shown that the defendant did not fairly state all the facts to his counsel, but only a part of the case.

But in the later case of Cohen *v.* Morgan, 6 Dow & Ry., 8, it appears that the defendant simply stated the facts before the Justice, and it was held, that "it was for the Justice to say whether the facts amounted to a felony, and to determine whether he would, or would not, issue his warrant to apprehend the party accused."

In the case of Stone *v.* Swift, (4 Pick., 389,) the learned Judge who delivered the opinion of the Court, said :

"But, as has been observed, all the counts are founded upon the knowledge of Swift, that he had no just cause of action when his suit was commenced.  Upon considering the evidence in the case, the Court do not perceive that the jury could properly have found that to be the fact.  It appears that Swift acted upon advice of counsel.  If he did not withhold any information from his counsel, with the intent to procure an opinion that might operate to shelter and protect him against a suit, but, on the contrary, if he, being doubtful of his legal rights, consulted learned counsel, with a view to ascertain them, and afterwards pursued the course pointed out by his legal adviser, he is not liable to this action, notwithstanding his counsel may have mistaken the law."

And in the case of Hall *v.* Suydam, (6 Barbour S. C. R., 83,) it was said by Paige, P. J., that "if a party lays the facts of his case fully and fairly before counsel, and acts in good faith upon the opinion given him by such counsel, (however erroneous that opinion may be,) it is sufficient evidence of probable cause, and is a good defence to an action for a malicious arrest.  But in such a case, it is properly a question for a jury, whether such party acted *bona fide* on the opinion given him by his professional adviser, believing that the plaintiff was guilty of the crime of which he was accused, or that he had a good cause of action against the plaintiff."

In this case, the defendant seems to have laid his case fully before his counsel, and before instituting proceedings, the counsel demanded the return of the notes from the plaintiff, and heard from him the alleged ground upon which he refused to return them.  The counsel was then in possession of all the material

facts of the case, and the arrest was made under his advice, and by his professional assistance.   It is true, that the question whether the defendant acted *bona fide* under the advice of his counsel, is a question of intention to be determined by the jury, in all cases where there is any legitimate evidence to show a want of good faith in following professional advice.   But in this case, as in the case from Pickering, already quoted, we do not see that the jury could have properly so found.   There was no evidence to show bad faith in the defendant.   He was justified in the statement of facts and belief made in his affidavit, and as to his mistake of law, there is much better reason for it, on his part, than for the same mistake in reference to the same question, on the part of his counsel and the recorder.   From the nature of the case, the mistake was not so great as is often committed by attorneys and officers of the law.   There is no great difference in morality and common sense between a fraud committed by putting in pledge notes already paid, and obtaining money under false pretences.   The distinction is more technical than real.   The fraudulent motive is essentially the same in both cases, and the injury to the party defrauded is in substance the same.

But while the conduct of the plaintiff was reprehensible in the last degree, that of the defendant was by no means blameless.. His following the plaintiff, while under arrest, through the streets, certainly did show malice.   Still, it must be conceded that if malice could be justified, the defendant had some cause for it.   Both parties seem to have had a due share of it.   But there was this difference between the two parties: before the arrest the only cause plaintiff had for his malice was his own misconduct towards the defendant, while the defendant had not his own misconduct against the plaintiff, but that of the plaintiff against him—the defendant—as his excuse.

From a consideration of the circumstances of this case, and the law applicable to them, our conclusion is, that there was probable cause for the arrest of the plaintiff, and that this action cannot be maintained.

Judgment reversed, and the case of plaintiff dismissed.