Filed 2/26/15  Perez v. City of Fremont CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MIRAMAR PEREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF FREMONT et al., <br><br> Defendants and Respondents. | A140271 <br><br> (Alameda County <br> Super. Ct. No. RG11-579660) |

This is an appeal from judgment in a civil lawsuit brought by the family of decedent Juan Mosso against defendants the City of Fremont, on behalf of itself and the Fremont Police Department (the department), and four individual members of the police force.[1]  Three of the defendant officers shot decedent, who was armed with a 10-inch knife, after responding to a 911 call regarding a violent altercation involving his former wife, plaintiff Miramar Perez, and her new boyfriend, Carlos Zavala.  The trial court granted the summary judgment motion of defendants after finding that the defendant officers' use of force against decedent was objectively reasonable under the circumstances and, thus, that defendants were immune from liability.  We affirm this judgment, including the trial court's underlying evidentiary rulings, which plaintiffs have also challenged on appeal.

---

[1]     Plaintiffs are decedent's estranged wife, Miramar Perez, and their three minor children.  The individually named defendants are Officers Jeffery Lawrence, Timothy Ferrara, John Kennedy, and Sergeant Paul McCormick.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 27, 2012, plaintiffs filed a second amended complaint asserting causes of action for wrongful death, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. This complaint arose from the following set of circumstances.

Perez and decedent married in 1999 and had three children before separating in May 2010. During their separation, decedent, more than once, visited Perez's apartment and made threats against her. One time, he violently raped Perez upon visiting her apartment drunk in the middle of the night.

On the night in question, June 13, 2010, decedent came to Perez's apartment drunk at about 2:30 a.m. and found Perez in the presence of her new boyfriend, Zavala. Perez had unsuccessfully tried to conceal Zavala from decedent on the apartment balcony because she feared him. However, Zavala reentered the apartment upon realizing that decedent, noticeably drunk, was attempting to sexually assault Perez. Zavala attempted to persuade decedent to leave the apartment, advising him to let the children sleep. However, decedent refused and insisted that Zavala leave. Zavala agreed, while advising decedent to do the same.

At this point, decedent went to the kitchen and retrieved a 10-inch knife. Zavala grabbed a wooden chair to defend himself. Decedent stabbed at Zavala, repeatedly slashing the chair. Decedent then forcibly pushed Zavala out of the apartment and into the hallway, slamming the door shut. Fearing for the safety of plaintiffs, Zavala went downstairs and called 911 on his cellular phone, telling the dispatcher in Spanish to send police immediately because a man was in the apartment threatening his wife and children. The dispatcher, in turn, advised the police, "male wants to 187 his ex," shorthand for wanting to murder his ex-significant other. (See Pen. Code, § 187.) The dispatcher further advised that the suspect (decedent) was inside the residence with the woman and her children (plaintiffs).

When police arrived at Perez's residence, an apartment building in Fremont, Zavala was still on the phone with the 911 dispatcher. Zavala, visibly frightened, took

2

Officer Ferrara upstairs to the front door of Perez's unit and confirmed that decedent was inside with plaintiffs and armed with a knife. Officer Ferrara could hear a frantic female voice through the door, as well as a man apparently attempting to silence her. With, and to the right of, Officer Ferrara were Officers Lawrence and Kennedy, while Officer Foster was further back towards the exit doorway. Two other officers, Layfield and Blass, positioned themselves outside and around to the back of the apartment. They, in turn, could see people moving inside the apartment and could hear a man yelling. Officer Layfield also heard a woman inside crying and pleading.

Around this time, Sergeant McCormick arrived and removed Zavala to the building's exterior staircase for his safety. Sergeant McCormick believed it prudent to announce the police officers' presence at the residence to avoid confusion and hopefully deescalate the situation. As such, at Sergeant McCormick's command, Officer Ferrara loudly pounded on the front door and stated, "Police" or "Fremont Police," and "Open the door." Officer Ferrara then waited about 15 seconds before repeating this "knock-notice" announcement. Officer Foster, in turn, added, "Policia."[2] No one responded to the officers' announcements.

At this point, Officer Ferrara no longer heard voices in the apartment. Officer Layfield, still positioned outside the rear of the apartment, heard the officers pounding on the door, but did not hear them state, "Police." He therefore radioed to ask whether the officers were pounding on the door, which Officer Ferrara immediately confirmed. Officer Blass, outside with Officer Layfield, could observe Perez in the bedroom, crying and pleading. Perez later confirmed that, while they were in the bedroom, decedent continued to hold the knife with the blade up.

---

[2] There were two audio recordings from the night in question that plaintiffs relied upon to oppose summary judgment. The first recording was from a dash-cam microphone carried by Sergeant McCormick. On this recording, Sergeant McCormick is heard directing the officers to "let him know you're here." This recording also captures the sounds of the officers knocking on the door, and then stating one time: "Fremont Police" and "Policia." The second recording was derived from Zavala's 911 call, which also captured some of the sounds made by the officers as they arrived at and sought entry into Perez's apartment.

3

The officers outside Perez's door believed the situation – with decedent locked inside the apartment with plaintiffs, while drunk, angry and armed with the knife – was extremely volatile based upon their training and experience with domestic violence. Sergeant McCormick thus made the decision, when no one responded to the police officers' "knock notice" announcements, to forcibly enter the apartment. As such, Officer Ferrara kicked the door several times and, when the door would not open, Officer Kennedy kicked it two more times. The door then opened slightly, before stopping. Surprised, the officers presumed a person was just inside the door, but could not see anyone. Suddenly, decedent grabbed the door, pulled it open and moved forward into the doorway with the 10-inch knife raised to chest level. As decedent brandished the weapon at the officers, Officer Ferrara shouted, "Drop the knife" or "Get back," and fired his gun. At about the same time, Officer Lawrence fired his shotgun and Officer Kennedy fired his handgun. Decedent, shot multiple times in the chest and torso, turned sideways and fell, still holding the knife. No more shots were fired. The officers later explained that, when they simultaneously fired their weapons multiple times in less than two seconds, they were fearful that decedent, who was within the "21-foot danger zone" with a raised deadly weapon, was attacking them with the knife.[3]

At this point, the officers called for Perez, who came forward and was directed into the hallway. The officers then went inside to retrieve the children, covering their eyes as they passed decedent's body. Perez later testified that she and decedent had heard knocking on the door, but did not hear the word, "police" or "policia." As such, it appeared to Perez that decedent, as he approached the door with the knife, thought Zavala had returned to the apartment.

On July 12, 2013, defendants filed a motion for summary judgment or, in the alternative, summary adjudication on the grounds that: (1) the force used by the defendant officers was objectively reasonably under the circumstances and privileged; (2) the defendant officers are immune from liability pursuant to Penal Code section 196;

---

[3]     Police officers, including the defendant officers, are commonly taught that a knife is a potentially deadly weapon within a range of 21 feet.

4

(3) they had no duty to use alternative tactics to deadly force; (4) plaintiffs' emotional distress causes of action are not supportable; and (5) defendants are immune from liability pursuant to Government Code sections 815.2, 820.2, and 820.8.

Plaintiffs thereafter opposed the motion on the ground that several disputed issues of material fact exist with respect to defendants' use of force, and that defendants had failed to establish any affirmative defense. In doing so, plaintiffs relied upon declarations from three expert witnesses. One such expert, retired police officer, Gregory Stutchman, analyzed the two audio recordings (one from Zavala's 911 call and the other from Sergeant McCormick's dash-cam), which captured some of the events surrounding decedent's death. Among other things, Stutchman opined that Officer Ferrara did not make his "knock notice" announcement with the frequency or volume that he described in his testimony (i.e., he made the announcement several times in a "Marine Corps voice").

In addition, Barry V. Brodd, a retired police officer and Police Academy/SWAT team instructor, offered opinions in his declaration that the defendant officers failed to follow acceptable standards of police training and practice before and upon forcing entry into Perez's apartment, in that they acted prematurely, without proper announcement and without clear understanding of the circumstances. As a result, Brodd opined, the defendant officers unnecessarily elevated the risk to plaintiffs and decedent.

Finally, forensic expert, Kenneth Moses, offered opinions with respect to where and how decedent died. According to Moses, physical evidence suggested decedent was not advancing upon the officers when he was shot. Ultimately, however, Moses agreed decedent was about five to six feet from the officers when shot, although Moses opined decedent was four feet from the doorframe rather than in the door frame, as the officers described.

In their summary judgment reply papers, defendants included numerous objections to the declarations of plaintiffs' experts. Among other such objections, defendants challenged both Brodd's opinions and Stutchman's opinions regarding the defendant

5

officers' actions and decision-making as argumentative, conclusory, speculative and lacking foundation.

On September 30, 2013, following a contested hearing, the trial court granted defendants' summary judgment motion. In doing so, the trial court agreed with defendants that there were no disputed issues of material fact with respect to the officers' use of force, which was objectively reasonable under the circumstances, and that defendants had successfully established immunity from liability. The trial court also granted several of defendants' evidentiary objections.

Judgment was thus entered in favor of defendants on October 22, 2013. This timely appeal followed.[4]

## DISCUSSION

Plaintiffs contend the trial court erred in: (1) granting summary judgment in favor of defendants; and (2) sustaining defendants' objections to certain statements in declarations filed by two of their expert witnesses, Barry Brodd and Gregg Stutchman. We address each contention in turn below after setting forth the relevant legal principles, which are not in dispute.

## I. Legal Principles Governing a Defendant's Motion for Summary Judgment.

A trial court's summary judgment ruling is subject to de novo review. (*Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) "In performing [the] de novo review, [the appellate court] must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [her] evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Ibid*.)

A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in

---

[4]     Plaintiffs did not file a timely Reply Brief on appeal.

6

the papers, . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id*., at subd. (p)(2).)

"Summary judgment law in this state . . . require[s] a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 854 [fn. omitted].) However, "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850; see also *Binder v. Aetna Life Ins. Co*. (1999) 75 Cal.App.4th 832, 839 ["[o]nly when the inferences are indisputable may the court decide the issues as a matter of law"].) Thus, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.)

"We review for abuse of discretion any evidentiary ruling made in connection with the [summary judgment] motion. [Citation]." (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 505.)

7

## A.    Summary Judgment in Favor of Defendants.

As stated above, the trial court granted summary judgment in favor of defendants after finding, based upon the undisputed facts, that the defendant officers' use of deadly force against decedent was objectively reasonable under the circumstances confronting them and, thus, that they were immune from liability pursuant to Penal Code section 196.[5]  For reasons set forth below, we agree with this ruling.

As an initial matter, the parties agree a recent California Supreme Court case, *Hayes v. County of San Diego* (2013) 57 Cal.4th 622 (*Hayes*), provides the legal framework for our review of this case.  In *Hayes*, similar to our case, police officers shot dead a man who came toward them with a large knife in his raised hand after they entered his house during a visit triggered by a 911 call from a neighbor who reported hearing screaming.[6]  (*Id*. at p. 625.)  The decedent's daughter later filed suit against the county and two sheriff deputies in federal court, alleging, like plaintiffs in our case, that the defendants negligently killed her father.  On appeal from the grant of summary judgment in favor of defendants, the Ninth Circuit Court of Appeals called upon the California Supreme Court to decide whether, as a matter of state law, law enforcement officers' conduct and decision making leading up to their use of deadly force are relevant considerations in determining whether their use of deadly force gives rise to negligence liability.  (*Id*. at p. 630.)  In response, the California Supreme Court clarified the following legal principles, which apply squarely to our case:

"Except when otherwise provided by law, public employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons. (Gov. Code, § 820.)  Also, public entities are generally liable for injuries caused by the negligence of their

---

[5]    Unless otherwise stated, all statutory citations herein are to the Penal Code.

[6]    In *Hayes,* after the officers arrived at the decedent's house, the decedent's girlfriend told them that, earlier in the evening, decedent had tried to kill himself.  At that point, the officers entered the house, and the aforementioned deadly shooting of the suicidal decedent occurred.  (*Hayes, supra*, 57 Cal.4th at p. 625.)

employees acting in the scope of their employment. (*Id.*, § 815.2.) Finally, close relatives and dependents of a negligently killed person can recover damages for their loss. (Code Civ. Proc.,  § 377.60.) Under those state statutes, general principles of tort law, in particular the law of negligence, govern this case.

" '[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citations.] Thus, duty is a critical element of negligence liability." (*Hayes, supra*, 57 Cal.4th at p. 629.)

"This court has long recognized that peace officers have a duty to act reasonably when using deadly force.  [Citations.] The reasonableness of an officer's conduct is determined in light of the totality of circumstances.  [Citations.]" (*Hayes, supra*, 57 Cal.4th at p. 629.)  In making this determination, "preshooting conduct is included in the totality of circumstances surrounding an officer's use of deadly force, and therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct. [Citation.] *But in a case like this one, where the preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable*." (*Id.* at p. 632 [italics added].)

Moreover, consistent with these common law rules, California statutory law provides immunity to police officers who use deadly force against a suspect where the totality of the circumstances reflect their use of such force was reasonable:  "Under Penal Code section 196, a police officer who kills someone has committed a justifiable homicide if the homicide was 'necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty' or when 'necessarily committed in retaking felons who have been rescued or who have escaped . . . and who are fleeing from justice or resisting such arrest.' (Pen. Code, § 196, subds. 2, 3.)  There can be no civil liability under California law as the result of a justifiable

9

homicide. [Citations.]" (*Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 349 (*Martinez*).) "The test for determining whether a homicide was justifiable under Penal Code section 196 is whether the circumstances 'reasonably create[d] a fear of death or serious bodily harm to the officer or to another.' " (*Ibid.*)

In our case, despite purporting to apply *Hayes*, plaintiffs rely entirely on the defendant officers' "preshooting conduct" to argue that triable issues of fact exist as to defendants' negligence, such as "defendant[s'] fail[ure] to use reasonable care to: assess the situation facing them when they arrived in response to a call for assistance; fail[ure] to coordinate their activities to include the non-lethal measures including non-lethal force; and fail[ure] to follow accepted police practices including those applicable to identifying themselves when making contact with the plaintiffs and their decedent under the circumstances." Further, with respect to their cause of action for negligence per se, plaintiffs insist there is a triable issue of fact as to whether "defendants falsely claimed to have given 'knock notice' " as required under section 844.[7] Finally, they contend the trial court erroneously "resorted, *sua sponte*, to the rationale of 'exigent circumstances' as a grounds for granting defendants' motion," even though this argument was not raised by defendants or otherwise supported by the facts.

We reject plaintiffs' reasoning entirely. First, with respect to plaintiffs' argument that the defendant officers' purported noncompliance with the "knock notice" requirements of section 844 suffices to show a triable issue of fact with respect to their purported negligence, both the law and the facts are to the contrary. As defendants point out, the knock-notice requirements are excused where "exigent circumstances" – meaning, "an emergency situation requiring swift action to prevent physical harm to persons" – exist. (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771; see also *People v. Kizzee* (1979) 94 Cal.App.3d 927, 935 ["Emergency situations which excuse compliance

---

[7] Section 844 provides: "To make an arrest, a private person, if the offense is a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

10

with the warrant requirement also excuse compliance with the strictures of Penal Code section 844"].) Here, exigent circumstances undoubtedly existed, and were properly considered by the trial court, given the following undisputed facts: (1) decedent, drunk and angry at 2:30 a.m., entered Perez's apartment and attempted to sexually assault her; (2) decedent then attacked Perez's new boyfriend, Zavala, with a 10-inch knife, repeatedly slashing the wooden chair Zavala was using for protection before forcefully ejecting him from the residence; (3) Zavala, visibly distraught and scared, called 911 from his cellular phone to report that decedent, still armed with the knife, remained locked inside the residence with Perez and her young children; (4) the police dispatcher advised officers to respond to a domestic violence incident wherein the suspect "wants to [Penal Code §] 187 his ex," who was locked inside with her children; (5) when police arrived at the residence they observed decedent angrily yelling at Perez, who was, in turn, crying and upset; (6) defendant officers, upon pounding on the door and announcing their presence *at least once*, received no response from inside the residence; (7) defendant officers believed that decedent was ignoring them or refusing to open the door, and thus determined it was necessary to forcibly open it to protect the inhabitants; and (8) after defendant officers took action to forcibly open the door, they were confronted by decedent, who came within five to six feet of them wielding the 10-inch knife, which distance was well-inside the 21-foot danger zone the officers were trained to avoid.

Plaintiffs do not and cannot dispute these facts. And while they may dispute the *significance* of them, the law is quite clear: "An officer ' "may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." ' [Citation.]" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527 (*Brown*).) "The test of reasonableness in this context is an objective one, viewed from the vantage of a reasonable officer on the scene. It is also highly deferential to the police officer's need to protect himself and others: 'The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. [Citation.] . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-

second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." (*Martinez, supra,* 47 Cal.App.4th at p. 343.) Moreover, particularly relevant to this calculus is " 'the gravity of the underlying offense' suspected by the officers. ([*Welsh v. Wisconsin* (1984) 466 U.S. 740, 753].) If the suspected offense is 'extremely minor,' a warrantless home entry will almost inevitably be unreasonable under the Fourth Amendment. (*Ibid.*) [Fn. omitted.] On the other hand, case law recognizes that probable cause of ongoing spousal abuse at a residence warrants immediate police intervention." (*People v. Higgins* (1994) 26 Cal.App.4th 247, 252.)

Here, at least one of the suspected offenses was no less than attempted murder of Zavala. And, considering this fact in light of the other exigent circumstances, including the possibility of decedent having taken his estranged wife hostage, there is simply no basis to second-guess the defendant officers' "split-second" decision to fire upon appellant – an undisputedly drunk, angry man approaching to within five or six feet of the officers with a deadly weapon. The trial court undoubtedly had a valid basis for granting summary judgment to defendants. (See *Martinez, supra*, 47 Cal.App.4th at p. 345 [" 'an officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer' "]. Simply put, because the circumstances reasonably engendered "a fear of death or serious bodily harm" within the minds of the officers, section 196 immunized them from liability for wrongful death or negligence.[8] (*Martinez, supra*, 47 Cal.App.4th at p. 349; *Brown, supra,* 171 Cal.App.4th at p. 533.)

Our conclusion in this regard is not altered by plaintiffs' insistence that disputed facts exist as to whether defendant officers discharged their statutory duty under section

---

[8]    The fact that decedent did not know police officers were at Perez's door when he approached it with the knife does not alter our analysis. The law is clear that the reasonableness inquiry is based upon the perspective of the officers, not the suspect. (*Martinez, supra,* 47 Cal.App.4th at p. 343.)

844 to give "knock notice." While plaintiffs point to their experts' opinions that the officers' announcements at Perez's door were not as forceful, loud or insistent as the officers described, it remains undisputed: (1) the officers "pounded" on the door at least once with sufficient force to be heard by the Officers Layfield and Blass, who were positioned outside behind the apartment building; and (2) stated at least once "Fremont Police" and "Policia." Nothing more was required under the law.[9] (See *Duke v. Superior Court* (1969) 1 Cal.3d 314, 319 ["police cannot comply with the absolute minimum required by section 844 without (1) knocking or utilizing other means reasonably calculated to give adequate notice of their presence to the occupants and (2) identifying themselves as police officers"]; *People v. Sotelo* (1971) 18 Cal.App.3d 9, 18 ["identification [by police] without announcement of purpose can constitute substantial compliance with section 844 '*if the surrounding circumstances made the officers' purpose clear* to the occupants' "].)

Moreover, we likewise reject plaintiffs' argument that the expert declaration of Barry Brodd, who opines the defendant officers' tactical conduct and decision-making failed to comport with police standards and foreseeably caused the alleged harm, was sufficient to demonstrate triable issues of fact as to negligence. As we have already

---

[9] In particular, plaintiffs make much of the fact that, while Office Ferrara testified that he announced their presence two or three times in a loud, "Marine Corps Instructor" voice, his announcement was only heard once, and not loudly, on the two police department audio recordings produced in this case. However, as the trial court recognized, this fact, even if disputed, is not material (and, thus, does not defeat summary judgment), given that the statutory rule, as interpreted by the courts, does not require more than one knock notice or any particular volume of announcement. (§ 844; *Duke v. Superior Court, supra,* 1 Cal.3d at p. 319.) In addition, as defendants note, plaintiffs offered no evidence with respect to the circumstances or conditions of the department's audio recordings, such as the calibration of the microphone transmitter or recording device, or the capacity of the transmitter or device to capture sound at a particular volume from a particular distance. Instead, they merely offer the conclusory opinion of Gregory Stutchman that the announcement was insufficiently loud based on his review of the audio recordings. (See p. 17, *post*.) Under these circumstances, we conclude that the mere fact that the audio recordings reflect only one, minimally loud "police" announcement does nothing to undermine the officers' consistent testimony that they loudly pounded on Perez's door and announced their presence two or three times.

explained, the reasonableness of defendants' conduct or decision-making is assessed in light of the totality of the circumstances, including the circumstances leading up to decedent's shooting *and* those at the time of the shooting. As such, we decline plaintiffs' invitation to focus in isolation on the defendant officers' preshooting tactical choices, including their decision to force entry when they did without attempting less forcible options like communicating with decedent or Perez via telephone, in order to create a triable issue. As explained above, the totality of the circumstances in this case – including decedent's attempted murder of Zavala and attempted sexual assault of Perez, his anger and drunkenness, and his brandishing and demonstrated willingness to use a deadly weapon – justified the defendant officers' use of deadly force against him. Any other finding would improperly substitute this court's opinion, far removed from the actual incident that occurred, as to what action was required to ensure the safety of both plaintiffs and law enforcement: " '[U]nder *Graham* [*v. Connor* (1989) 490 U.S. 386], we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.' [Citation.]" (*Martinez, supra*, 47 Cal.App.4th at p. 343. See also *Brown, supra*, 171 Cal.App.4th at pp. 537-538 ["There will virtually always be a *range* of conduct that is reasonable. As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm"].)

Finally, given our conclusion that defendant officers are immune from liability under section 196 because they acted reasonably in shooting decedent, we further conclude "there is no basis for respondeat superior liability against the [City of Fremont or its police department]. (Gov. Code, § 815.2 [public entity not liable for acts of employee if the employee is immune from liability]; *Thomas v. City of Richmond* (1995) 9 Cal.4th 1154, 1157-1158 . . . ." (*Martinez, supra*, 47 Cal.App.4th at p. 350. See also

14

Gov. Code, § 820.8 ["Except as otherwise provided by statute, a public employee is not liable for any injury caused by the act or omission of another person"].)[10]  And nor is there any basis for holding defendants liable for negligent or intentional infliction of emotional distress.  (See *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 884 [negligent infliction of emotional distress is merely alternative theory of negligence, not an independent tort]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1376 [to establish a claim for intentional infliction of emotional distress, plaintiff must show outrageous conduct by the defendants].)

### B. Sustaining Defendants' Evidentiary Objections.

Plaintiffs' remaining contention is that the trial court abused its discretion in sustaining four defense objections to declarations submitted by two of their experts, Stutchman and Brodd, in opposition to summary judgment.  Specifically, the trial court sustained defense objections to paragraphs 75, 81 through 83, and 101 of Brodd's declaration, and paragraph 32 of Stutchman's declaration.  In doing so, the trial court found the statements by plaintiffs' experts in the identified paragraphs were argumentative, speculative and/or conclusory.  Both California law and the relevant factual record support these evidentiary rulings as a proper exercise of discretion.  (See *Shugart v. Regents of University of California, supra,* 199 Cal.App.4th at p. 505.)

An expert declaration offered under the summary judgment statute must be based "on personal knowledge, . . . set forth admissible evidence, and . . . show affirmatively

---

[10]     While plaintiffs assert causes of action for both negligence based on the defendant officers' pre-shooting conduct, including their failure to comply with section 844's knock notice requirements, and based on their wrongful shooting of decedent, the California Supreme Court issued an opinion after the operative complaint was filed that makes absolutely clear that no separate cause of action lies for an officer's preshooting conduct where the only alleged harm is the shooting victim's death:  "Because plaintiff did not allege a separate injury from the preshooting conduct of law enforcement personnel, the preshooting conduct is only relevant here to the extent it shows, as part of the totality of circumstances, that the shooting itself was negligent. Thus, a final determination that the shooting was not negligent would preclude plaintiff from pursuing a separate theory of liability based on the preshooting conduct alone."  (*Hayes, supra*, 57 Cal.4th at p. 631.)

that the affiant is competent to testify to the matters stated. . . ." (Code Civ. Proc., § 437c, subd. (d).) " ' "[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]' [Citation.]" [Citation.] Thus, in order '[t]o defeat summary adjudication, plaintiffs [cannot] rely on assertions that are "conclusionary, argumentative or based on conjecture and speculation," but rather [are] required to 'make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact . . . ." [Citation.]' [Citation.]" (*Brown, supra*, 171 Cal.App.4th at p. 530.) "Most significant for our purposes is '[t]he general rule . . . that conclusions of fact are not binding on a summary judgment motion. [Citation.]' [Citation.]" (*Ibid*. See also *Williams v. Coombs* (1986) 179 Cal.App.3d 626, 638 [" '[It] is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' [Citation.] Consequently, the 'opinion of a witness on a question of law is obviously incompetent' "], disapproved on another ground in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885-886.)

These rules apply squarely to this case, and justify the court's decision to exclude the identified portions of Brodd's and Stutchman's declarations. Turning first to paragraph 75 of Brodd's declaration, he opines that, "given the apparent lack of exigent circumstances," and given Sergeant McCormick's awareness that Zavala could call Perez on his cellular phone, he should have attempted phone contact inside Perez's apartment rather than commanding forced entry. The court sustained defendants' objection that these statements were improperly conclusory and argumentative as to "the apparent lack of exigent circumstances." This was correct. To the extent Brodd purported to opine that exigent circumstances were not apparent or that Sergeant McCormick did not act reasonably in ordering forced entry rather than ordering Zavala to call Perez, his declaration inappropriately drew legal conclusions reserved for the court. As noted by our appellate colleagues in the Second District, Division Five, in rejecting an expert's

16

opinion that the defendant police department's failure to provide less-lethal alternatives to their deputies (such as taser or tear gas) and train them in their use amounted to deliberate indifference to the misuse of deadly force: "The federal courts have been highly critical . . . when an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion. [Citations.] [Plaintiff's expert's] declaration falls into the latter category by inappropriately drawing legal conclusions concerning such matters as the objective reasonableness of the deputies' conduct . . . ." (*Martinez, supra*, 47 Cal.App.4th at p. 348.)

In paragraph 32, Stutchman states that the officer's knock notice announcement was "so faint that it could easily be missed or not understood" and was delivered in a "singsong" manner. The court sustained defendants' objection to these statements as speculative, argumentative and conclusory. We agree with this ruling. Stutchman's opinion in this regard was based on the department's audio recordings. However, there is nothing in the record to provide the necessary factual basis for an opinion regarding the volume of any particular voice captured on the recording. Among other missing information, there is no evidence regarding the underlying conditions in which the recordings were made, the calibration or accuracy of the recording devices or the distance of the recording devices from the recorded voice. Accordingly, the trial court properly rejected Stutchman's testimony on this issue based upon its lack of evidentiary value. (*Brown, supra*, 171 Cal.App.4th at p. 529 ["the expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value"].)

Next, in paragraphs 81 through 83, Brodd opines that decedent was unaware that police officers were at Perez's door, and believed instead that Zavala was kicking open the door, prompting him to take the knife to confront Zavala. The court sustained defendants' objection to these statements as speculative as to what decedent was thinking. Clearly, the court's ruling was within its discretion. Brodd, an expert far removed from the crime scene, had no valid basis to opine as to decedent's state of mind when opening Perez's door and walking towards the police officers with a ten-inch knife.

17

Moreover, we question the relevance of decedent's state of mind, in any event, given that the court's focus when assessing defendants' section 196 immunity defense was "on the viewpoint of the reasonable police officer." (*Martinez, supra*, 47 Cal.App.4th at p. 348.)

Finally, in paragraph 101, Brodd opines based upon the audio recordings that there is no evidence Officer Ferrara loudly announced the officers' presence with a "Marine Corps voice," or that any of the officers continued to announce their presence while forcing entry into Perez's residence. He thus concluded that knock notice was not given in accordance with section 844, which, in turn, significantly and unreasonably heightened the risk of intentional confrontation with the suspect. The court sustained defendants' objection to these statements as argumentative and conclusory. We, again, agree. As explained above, because this paragraph of Brodd's declaration expresses an opinion on the legal question of whether defendants complied with section 844, it is inadmissible as improper expert opinion. (*Williams v. Coombs, supra,* 179 Cal.App.3d at p. 636; *Martinez, supra*, 47 Cal.App.4th at p. 348.)

Accordingly, for all the reasons stated, we decline to disturb the trial court's summary judgment rulings.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.